S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB #96512**
Scott.Kerin@usdoj.gov
**STACIE F. BECKERMAN, OSB # 062397**
Stacie.Beckerman@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 717-1117
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | Case No. 3:12-CR-00512-KI-02 |
| **MICHELLE LEE FREEMAN,** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **Defendant.** | |

The United States of America, through S. Amanda Marshall, United States Attorney for the District of Oregon, and Scott M. Kerin and Stacie F. Beckerman, Assistant United States Attorneys, hereby submits the following sentencing memorandum for the Court's review.  The government asks the Court to sentence the defendant to 50 years' imprisonment, to be followed by a Life term of supervised release.  When a mother encourages, participates in, condones and records the sexual abuse of her two young children, the very nature and circumstances of the offense demand that she receive the same sentence as her co-defendant and husband, Michael Freeman.  There is a $400 statutory assessment.

A.	**Summary of Proceedings.**

On August 27, 2013, the defendant pled guilty to four charges: two counts of Sexual Exploitation of Children – Production of Child Pornography (Counts 1 and 2 of the indictment), in violation of 18 U.S.C. §§ 2, 2251(a) and 2251(e), and two additional counts of Sexual Exploitation of Children – Being a Parent or Guardian Permitting the Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(b) and 2251(e). The charges cover offenses involving two victims (Victim 1 and Victim 2), the defendant's two minor daughters. The maximum sentence the Court may impose on each count of conviction is 30 years imprisonment, a fine of $250,000, and a life term of supervised release. **Each** count of conviction also carries a mandatory minimum term of 15 years imprisonment and a minimum of five years of supervised release.

The defendant also has a pending sex abuse case in Marion County, Oregon Circuit Court involving allegations concerning the same two victims in this case. In the state case she is facing a mandatory minimum sentence of 25 years imprisonment.

A Presentence Report (PSR) has been completed. Sentencing is currently set for December 11, 2013. The government believes that the very basic facts underlying the defendant's count of conviction, her sentencing guideline calculations and her criminal history are accurately laid out in the PSR.

The defendant sexually abused her own child, permitted her husband to sexually abuse her child, photographed and videotaped her husband abusing their child, and posed naked with both of her children while her husband took pictures. On December 4, 2013, the Court sentenced the father to 50 years' imprisonment. This defendant deserves nothing less. For every argument she can make for a lesser sentence, there is a counter argument justifying the same sentence as

her husband. This remains, for both parents, one of those cases that demands a very lengthy term of imprisonment. There is no indication that the defendants in this case would ever have voluntarily stopped abusing their children without the intervention of a group of dedicated law enforcement agents. That is a frightening thought.

The case against the defendants was made after pornographic images of their daughters surfaced in two separate investigations, one in California and one in Colorado. The images depicted Michael Freeman sexually abusing one of his daughters. The images also depicted the defendant, Michelle Freeman, lying on a bed with her two minor daughters – all three of them nude, and being photographed by Michael Freeman. As the investigation developed, investigators learned even more disturbing information about both parents and their involvement in the sexual abuse of their minor daughters.

## California Images

On June 23, 2011, Homeland Security Investigations (HSI) Los Angeles, California executed a federal search warrant seeking evidence related to the possession of child pornography. Pursuant to the search warrant, digital media was seized and analyzed by a computer forensic examiner. As a result of the examination numerous images and videos of previously unidentified children engaged in sexually explicit conduct was discovered (the California images). The material was submitted to the National Center for Missing and Exploited Children (NCMEC), Child Victim Identification Program (CVIP) to be checked against the Child Recognition and Identification System (CRIS) in an effort to identify the victims. As a result of the review, NCMEC determined that the submission included 97 image files of a previously unidentified victim of child sexual exploitation.

Of the 97 California images, 87 of them depicted a female prepubescent child (later identified as Victim 1). The other 10 images depict Victim 1 and another female prepubescent child (later identified as Victim 2). Victim 1 was estimated to be between the ages of five and seven years old and Victim 2 was estimated to be between the ages of three and five at the time.

In the California images, Victim 1 was shown in various states of dress and undress. Of the 87 images that show Victim 1 alone, 16 of them involved the lewd and lascivious display of her genitalia, including images of her with her legs spread open exposing her vagina and an image depicting a close up of what appears to be her vagina being spread open with her fingers. Four of the images showed Victim 1 holding a white piece of paper with writing. In two of the images the paper has the words "I like Timmy" written on it. In the other two images the paper has the words and drawing of a heart "I [heart] Timmy." In one of the images Victim 1 is shown holding the sign "I [heart] Timmy" while pulling aside her underwear to expose her vagina. According to the defendant's own sentencing submissions, she appeared to be aware that her husband was sharing these images with "Timm," yet did nothing to stop it.

**Colorado Images**

On June 27, 2012, NCMEC CVIP also received material submitted by the Federal Bureau of Investigation which had been discovered on seized media from another child pornography investigation conducted in Colorado. NCMEC CVIP discovered over 200 images and two videos within the submitted material (the Colorado images) that depicted the same children (Victim 1 and Victim 2) as in the material submitted by HSI Los Angeles. Several of the images were the same as images submitted by HSI, however, quite a number of new images and videos were also discovered.

Nine of the Colorado images depicted Victim 1 and Victim 2 being sexually abused by an adult male subject (later identified as Michael Freeman).  The images had been technically manipulated in order to remove the adult male's face from the images.  One of the images depicts a naked child (Victim 2) sitting in the lap of the adult male subject, who is also nude. The child is shown sitting on the right leg of the adult male subject with her left leg touching the genital area of the adult male while the other child (Victim 1, also nude) is sitting on the left leg of the adult male subject.  The image has also been technically manipulated to obscure the background.  In three of the images, Victim 1 is sitting on the adult male subject's lap with her vagina directly in contact with the adult male subject's penis.  In two of those images Victim 1 is using her fingers to spread her labia open.  These images have also been technically manipulated in order to obscure the background.  In two of the images Victim 1 is sitting on the floor in front of the adult male subject, who is sitting in a chair, and Victim 1 is using her right hand to grasp the penis of the adult male subject.  In the second of the two images, Victim 1's mouth is wide open and appears to be about to orally copulate the adult male subject.

Six of the Colorado images depicted Victim 1 and Victim 2 with defendant Michelle Freeman, all three of them are posing in the nude and the images of the children are child pornography.  At the time the defendant's true identity was unknown and she was referenced as "Jane Doe" by the investigators.  In the first two images, defendant Michelle Freeman is embracing Victim 1 and Victim 2.  All three of them are nude and defendant Michelle Freeman is smiling at the camera.  The images depict the genitalia of Victim1 and Victim 2.  In the third image defendant Michelle Freeman and her daughters are nude and lying on their sides looking at the camera.  Defendant Michelle Freeman is again smiling at the camera.  In the fourth image defendant Michelle Freeman and her two minor daughters are nude and lying on their backs,

with their arms raised, and posing for the picture. Defendant Michelle Freeman is again smiling for the camera. The fifth image is similar to the Fourth image, except that defendant Michelle Freeman and her daughters' hands are down. Defendant Michelle Freeman is still smiling for the camera. In a sixth image defendant Michelle Freeman, Victim 1 and Victim 2 are bent over facing away from the camera with their buttocks in the air and the genitalia and anus of the three individuals exposed. The government will bring five of these images to Court and make them available as Exhibits at sentencing.

Within the Colorado images, agents also discovered some movie files. In one of the movie files, file MvOOO1, which is approximately 1 minute 11 seconds in length, depicts Victim 1 orally copulating the adult male subject (the co-defendant Michael Freeman). In the movie file Michael Freeman can be heard giving Victim 1 instructions, such as "Go faster please." Victim 1 then stops orally copulating Michael Freeman and begins to masturbate him with her hand. Michael Freeman then asks Victim 1 if she wants him to "do it" while she puts her mouth on his penis. Michael Freeman then uses his left hand to place Victim 1's head where he wants it while he masturbates with his right. Victim 1 then states "I don't want it in my mouth." The video ends shortly after.

On a second movie file, Mv0002, which is approximately 43 seconds in length, depicts Michael Freeman straddled across the chest of Victim 1. Victim 1 is lying on her back with her face up and Michael Freeman is straddling her so that his penis is directly over her mouth. Michael Freeman is masturbating himself and is overheard telling Victim 1 to open her mouth, which she does to a very limited extent. Michael Freeman then tells Victim 1 "Open your mouth more; it won't hurt you if a little gets in there." Michael Freeman then masturbates himself and ejaculates on Victim 1's face.

When reviewing the movie files the agents noted that the camera is not steady and it is obvious that a third person is holding it while Victim 1 is being sexually abused – based upon the investigation, including the statements made by Michael Freeman and Victim 1, the agents believe that the person filming the sexual abuse of Victim 1 is the defendant, Michelle Freeman.

### Jane Doe Warrant and the Defendant's Arrest

Based upon the recovered images, law enforcement agents knew they had discovered two previously unidentified sexual abuse victims (Victim 1 and Victim 2). Agents scoured the images for clues and saw that, although Michael Freeman's face was obscured and the victims were unidentified, there were multiple images of Michelle Freeman (known at the time only as "Jane Doe"). On August 7, 2012, based upon the investigation, an agent sought and obtained a "Jane Doe" arrest warrant in the District of Columbia for the adult woman depicted in the recovered images of child pornography. That same day, HSI sent out a nationwide alert/press release seeking assistance in identifying "Jane Doe" and the victims and pictures associated with her.

On September 4, 2012, HSI received multiple tips that "Jane Doe" was in fact the defendant Michelle Lee Freeman. On the morning of September 4, 2012, HSI Special Agents also received a call from the Salem Police Department telling them that Michelle Freeman and Michael Freeman had called the police and told them that Michelle Freeman was wanted by federal authorities and they were willing to turn themselves in to the police. The Salem police responded to the Freeman's residence and waited for federal agents to arrive.

Federal HSI agents attempted to interview Michelle Freeman, who confirmed that Victim 1 and Victim 2 were her children and then she refused to speak any more with the agents. The HSI agents also interviewed her husband, Michael Freeman. Michael Freeman told them that on

September 3, 2012, he received a message from a friend telling him that his wife was on the news and had been listed as a "Jane Doe" on a warrant. Michael Freeman also looked at the picture and identified his wife as being in the picture. Michael Freeman told the agents that he was in a "bad place" and went on to admit to taking nude photographs and videos of his daughter (Victim 1, age 9), performing various sexual acts. He also admitted that his other daughter (Victim 2, age 6), was also present while he was doing so.

In a more detailed interview with Salem Police Detectives, Michael Freeman told them that he started touching Victim 1 a few years ago before she turned 7. The abuse began with the defendant touching her vagina and having the victim touch his penis. He also said that he started feeling guilty about what he was doing so he told his wife, Michelle Freeman. Michael Freeman said that Michelle Freeman became so angry that she kicked him out of the house. Shortly thereafter, however, his wife allowed him to come back into the house and that "[t]hen somehow it got worse and . . . somehow she (Michelle Freeman) got involved." When the detectives asked Michael Freeman what he meant by "it got worse," he said that Michelle helped him videotape and photograph them as they both engaged in sexual acts with Victim 1.

Michael Freeman told the detectives that the first time his wife was involved was when she and Victim 1 simultaneously performed oral sex on him. Michael Freeman then went on to describe three videos that he and Michelle Freeman created:

He described Video # 1 as being of Michelle Freeman and Victim 1 performing oral sex on him. Michael Freeman said that Victim 2 was present while they were making the video but did not participate.

Michael Freeman described Video # 2 as Michelle Freeman performing oral sex on Victim 1 while he recorded the abuse. Victim 2 was present, but was not directly involved.

Michael Freeman described Video # 3 as Victim 1 performing oral sex on him. Victim 2 was present, but was not directly involved. Michelle Freeman recorded the abuse.

Michael Freeman also admitted that he took pictures of Victim 1 performing oral sex on him and that that all he did with her was touching and oral sex. He also admitted to touching Victim 1's vagina with a vibrator. Michael Freeman also said that his wife, Michelle Freeman, was involved in touching Victim 1 in three or four of the videos. Michael Freeman also told agents that his wife, Michelle Freeman, might have held the camera when the videos of sex abuse were recorded. Michael Freeman confirmed he was the adult male depicted in the photographs.

During the interview Michael Freeman also admitted that he traded via the Internet images of child pornography that he produced (images and movies) involving his daughter (Victim 1) with a person he knew as "Timm." Michael Freeman also received images of child pornography from "Timm," including images of 6 to 9 year old girls performing oral sex on an adult male. Michael Freeman also said that Michelle Freeman viewed the child pornography that he downloaded.

Michael Freeman stated that about eight months to a year before their arrest he and Michelle Freeman decided to stop all sexual contact with Victim 1. Despite vowing to stop, Michael Freeman said that he and his wife sexually abused Victim 1 on three more occasions, including having Victim 1 have oral sex with Michael Freeman; Michelle Freeman and Victim 1 together performing oral sex on Michael Freeman; and, Michelle Freeman performing oral sex on Victim 1.

Victim 1 was also interviewed by Salem Police Detectives and she told them that not only did her father abuse her, that her mother would also rub her private parts with her hand and

would also use "the black thing" (a vibrator) and put it against Victim 1's vagina. Victim 1 also told the police that her mother would lick her vagina on occasion. She also told the detectives that both her mother and father took pictures of her.

The defendant and Michael Freeman were arrested on federal charges, via a criminal complaint. The defendants were later indicted on four counts of Production of Child Pornography and Michael Freeman was also indicted on an additional count of Distribution of Child Pornography. The time span of the criminal conduct runs between February 2010 and June 27, 2012. The defendant and Michael Freeman were subsequently indicted in Marion County, Oregon Circuit Court for various acts of sexual abuse of his two daughters. The state charges are also pending.

B.   **Sentencing Guideline Calculations.**

While not bound by the Sentencing Guidelines, Courts must first consult the guidelines and take them into account at sentencing. *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 767 (2005). Even though the guidelines are advisory, they remain influential in an effort to ensure nationwide consistency in sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007) ("to secure nationwide consistency, the guidelines should be the starting point and initial benchmark" for sentencing); *see also, United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) ("[The] continuing duty of district courts to consult the guidelines is statutory"). The guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives," *United States v. Rita,* 551 U.S. 338, 350 (2007), and serve as a "lodestar" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, ___ U.S. ___, 2013 WL 2459523, * 9-10 (2013). While advisory, the Supreme Court has observed that "[c]ommon sense indicates that in general, this system will steer district courts to more within-guideline sentences." *Id.*

After the parties are given a chance to argue for a sentence they believe is appropriate, the court should consider the 18 U.S.C. § 3553(a) factors and decide whether they support the sentence advocated by the parties. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*citing Gall*, 128 S.Ct. at 596-97 n. 6). The court must then make an individualized sentencing determination based upon the facts. *Id.* The guidelines should not be given more or less weight than the other § 3553(a) factors. *Id.* If the court decides a non-guideline sentence is warranted the Court must ensure the justification is sufficiently compelling to support the degree of variance. *Id.* Once a sentence is selected, the Court must explain its rationale sufficiently to permit meaningful appellate review. *Id.* at 992.

Here, the government believes the defendant's advisory Sentencing Guideline calculations are as follows:

1. **Base Offense Level**, pursuant to U.S.S.G. § 2G2.1(a):　　　　　　　　　32

2. **Specific Offense Characteristics** that apply to the defendant's case:

    - Minor victim under the age of 12, U.S.S.G. § 2G2.1(b)(1):　　+4

    - Commission of a sexual act, U.S.S.G. § 2G2.1(b)(2)(A):　　+2

    - Defendant was parent of minor, U.S.S.G. § 2G2.1(b)(5):　　+2

    - Offense involved more than one victim (Multiple Count Adjustment), U.S.S.G. §§ 3D1.1, 3D1.2, 3D1.3 and 3D1.4:　　+2

    - Offense involved a pattern of activity involving prohibited conduct, U.S.S.G. § 4B1.5(b):　　+5

3. **Acceptance of Responsibility**, pursuant to U.S.S.G. § 3E1.1:　　-3

4. **Initial Offense Level:**　　　　　　　　　　　　　　　　　44

5.  **Total Offense Level after Chapter 5, Part A adjustment**:[1]     43

The defendant's Criminal History Category is I. With an Offense Level of 43 and a Criminal History Category of I, the defendant's advisory Sentencing Guideline range is a Life term of imprisonment. Based upon the statutory maximum sentences available (30 years per count of conviction) the PSR calculates defendant's advisory guideline sentence as 1,440 months imprisonment. Each count of conviction also carries a mandatory minimum term of 15 years imprisonment.

C.  **Government's Recommended Sentence.**

The government asks the Court to impose a sentence of **50 years' imprisonment** (the same sentence as her husband and co-defendant), to be followed by a Life term of supervised release. There is a $400 statutory assessment. In imposing the sentence we ask the Court:

- On **Count 1** (**Production of Child Pornography involving Victim 1**), to impose 25 years' imprisonment, to be followed by a life term of supervised release.

- On **Count 2** (**Production of Child Pornography involving Victim 2**), we ask the Court to also impose an additional 25 years' imprisonment, to be followed by a life term of supervised release, to run **concurrent** to the sentence imposed on Count 1.

- On **Count 3** (**Parent Permitting the Production of Child Pornography involving Victim 1**), we ask the Court to also impose an additional 25 years' imprisonment, to be followed by a life term of supervised release, to run **concurrent** to the sentence imposed on Count 1.

---

[1]  Pursuant to U.S.S.G. Chapter 5, Part A, in those rare instances where the total offense level exceeds 43 (the highest category on the Sentencing Guidelines) the offense level will be treated as a level 43.

- On **Count 4** (**Parent Permitting the Production of Child Pornography involving Victim 2**), we ask the Court to also impose an additional 25 years' imprisonment, to be followed by a life term of supervised release, to run **consecutive** to the sentence imposed on Count 1.

Defendant will also be required to register as a sex offender as required by law.

The government understands that there are a number of arguments that the Probation Department and the defendant will make in support of their request for the bare minimum sentence that the Court must impose, 15 years' imprisonment. Such a sentence would utterly fail to adequately reflect the nature, circumstances and seriousness of the defendant's crime. Such a sentence would also, functionally, absolve the defendant of any criminal liability for the abuse perpetrated on one of her daughters – to impose only a 15 year sentence means the defendant would not be punished for the abuse that one of her daughters endured as a result of her criminal acts. At the end of the day, for every argument for why the defendant should receive a lesser sentence than her co-defendant, there is an equal argument for why she should receive the same or a greater sentence. If there was one person in the world who should have protected these kids it was their mother – and she utterly failed to do so.

In a world full of various dangers, our parents are entrusted to keep us safe from the monsters that exist in society. Here, the defendant not only failed in her duty, she actually perpetrated it. Michael Freeman is truly a monster. A monster Michelle Freeman originally kicked out of her house when she found out that he had sexually touched their daughter. If the story ended at this point, her daughters could have remained safe. Unfortunately for the young victims in this case, even though Michelle Freeman knew her husband was a monster and despite the abuse she herself endured as a child, knowing its harmful effects, she nevertheless invited the

monster back into her house where she fed his appetite of destruction – and in turn, she became a monster herself.

There are certain crimes that are so abhorrent to civilized society and so devastate their victims and the community that the Court should, and must, impose an extremely lengthy term of imprisonment.  This is one of those cases.  In creating the Sentencing Guidelines, Congress attempted to reflect how serious they viewed various criminal acts.  In creating a guideline structure that advises the Court that the defendant should be sentenced to a term imprisonment for Life, Congress could not have been any more explicit about how serious they viewed the defendant's crime.  Congress did not create an exception that says women and men should be treated differently.  Based upon the very nature of the offense, there is simply no reason for a lesser sentence than 50 years in this case.

The government has reviewed the PSR and defendant's sentencing submissions in detail.  We have repeatedly asked ourselves, if the crimes Michelle Freeman committed were in fact committed by a male defendant (like her husband) would the Probation Office or anyone else would feel a mandatory minimum sentence of only 15 years' imprisonment was warranted?  We doubt it.  Despite the argument that Michelle Freeman was someone taken down a path that she otherwise would not have chosen, whether as a result of her religious beliefs preaching subservience to her husband, emotional abuse from her husband, or her psychological makeup given her own history of abuse as a child, when she was given a choice to end the cycle of abuse involving her own daughters she not only failed to stop it, she actively furthered and participated in it.  Looking at the images of Michelle Freeman lovingly smile at her husband as he took pictures of her lying next to her naked children, their bodies fully exposed, it is clear that Michelle Freeman is a fully willing participant in the sexual abuse of her daughters.

Just like in Michael Freeman's case, prior to imposing sentence, we ask the Court to again take a moment and think of the personal hell that these two young children went through, the types of abuse they were subjected to by **both** Michelle and Michael Freeman, and the length of time the abuse continued.  This is not a case of a mother living in denial while her husband or boyfriend does unspeakable things.  This is not the case of a passive individual being forced to do things she did not want to do.  Rather, this is a case of a mother knowing her children were being sexually abused, assisting in permanently recording that abuse and then joining in and becoming a full and willing participant in the sexual abuse of her children.  If or when Michelle Freeman addresses the Court, she will likely apologize and ask for mercy.  We ask the Court that if Michelle Freeman addresses you at sentencing, take a long hard look at her and consider just what type of mother sexually abuses her own daughter and videotapes her husband forcing a little girl to perform oral sex on him; ask whether the words she says in Court prior to sentencing are really true.  There are certain things that no child should ever have to endure, being sexually abused by **both** of your parents and having them permanently record those images for their own deviant sexual gratification is one of them.

While, due to the heroic efforts of law enforcement, the direct physical abuse of these young children is over, the damage that was done to them is not and may never be.  The images recording the abuse will also likely last forever.  While we all hope that the victims of childhood sexual abuse will fully recover, unfortunately, studies show that sexually abused children often suffer for the rest of their lives – the lives of Michael and Michelle Freeman amply demonstrate this.  Sexually abused children are more likely to develop depression, be unable to develop healthy relationships later in their lives, experience sexual dysfunctions, are more likely to be suicidal, and have a tendency to become either sexual abusers themselves as adults or become

prone to further victimization.  *See e.g.* Brown and Finkelhor, Impact of Child Sexual Abuse: A review of the research, Psychological Bulletin, Vol. 99(1), Jan 1986, 66-77; Schoettle, Child exploitation: A Study of Child Pornography, 19 J. Am. Acad. Child Psychiatry 289, 296 (1980); Densen-Gerner, Child Prostitution and Child Pornography: Medical, Legal, and Societal Aspects of the Commercial Exploitation of Children, reprinted in the U.S. Department of Health and Human Services, Sexual Abuse of Children: Selected Readings 77, 80 (1980).  Although the potential effects of Michelle and Michael Freeman's sexual abuse on their children is, for whatever reason, remarkably absent from Michelle Freeman's PSR, it was expressly noted in Michael Freeman's PSR as a reason for a very lengthy sentence:

> The ongoing effects of these crimes on the victims will likely be apparent throughout their lives.  Childhood sexual abuse has been correlated with higher levels of depression, guilty, shame, self-blame, eating disorders, somatic concerns, anxiety, sexual problems, dissociative patterns, repression, denial and relationship patterns.

Michael Freeman PSR, Justification.

In looking at the factors in 18 U.S.C. § 3553(a), such as the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we ask the Court to impose a 50 year sentence of imprisonment.  The Court should send the strongest message that it can that the sexual abuse of children will never be tolerated and to commit such crimes guarantees an extremely long prison sentence.

A 50 year prison sentence sends the strongest possible message to this defendant and others that society will not condone, excuse or tolerate their crimes. Although it may be true that if not for her husband, the defendant would not have engaged in sexually abusing her daughter – when she was given the opportunity to stop the abuse – she didn't. When she was given the opportunity to join the abuse and document the abuse – she did. Even according to her own evaluators, the defendant still presents some level of risk to children in the future – if she herself does not abuse a child in the future she remains a risk to bring another sex abuser into her life. Whether it is as someone who initiates the abuse of a child or she once again joins another abuser in carrying out the abuse, just like with her husband and co-defendant, at the end of the hearing, this Court should do all it can to ensure the defendant will never be in a position to ever sexually abuse another child. There is simply no risk of sexual abuse that we find acceptable when it comes to protecting a child.

There is no plea agreement.

Dated this 9th day of December, 2013.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

*Scott M. Kerin*
SCOTT M. KERIN, OSB # 965128
STACIE F. BECKERMAN, OSB # 062397
Assistant United States Attorneys
(503) 727-1000